UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DEREK MARTIN,

                       Plaintiff,                          11 Civ. 600 (PKC) (RLE)

         -against-                               MEMORANDUM
                                             AND ORDER

THE CITY OF NEW YORK,

                      Defendant.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          Plaintiff Derek Martin, currently incarcerated at Upstate Correctional Facility, brings this pro se action against the City of New York under 42 U.S.C. § 1983.  Martin alleges that he slipped and fell on a wet floor at Manhattan Detention Complex ("MDC") because the shoes issued to him were too large for his feet and had inadequate soles.  The defendant moves to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P.  For the reasons set forth below, the motion is granted.

BACKGROUND

          On April 17, 2010, the plaintiff slipped on a wet floor at MDC.  The wet floor was located near several showers and a sink.  The plaintiff alleges that the area was "poor[ly] designed" and that the floor did not have a drain to remove excess water.  (Am. Compl. at 3.)  He also alleges that there were no "Wet Floor" signs posted, and that Anderson, a corrections officer at MDC, "was in plain view to see the complete accident."  (Id.)

          At the time of his accident, the plaintiff was wearing slip-on shoes issued to him by the New York City Department of Correction ("DOC").  The plaintiff alleges that although he normally wears size 12, his DOC-issued shoes were size 14.  (Id. at 2.)  The plaintiff allegedly

slipped because his shoes were "two sizes too big" and did not have "adequate bottoms/soles to prevent slip and falls." (Id. at 3.)

Following the accident, the plaintiff visited MDC's medical clinic. An injury report from his visit indicates Martin complained of "injury to his right elbow, lower back and back of his neck." (Id. Ex. A.) The plaintiff thereafter made "numerous complaints" and "oral appeals" regarding his "need for shoes" and the wet floor, but did not file a written grievance. (Id. at 4.) The plaintiff allegedly "d[id] not know" whether MDC had grievance procedures and maintains that the grievance procedures "were never active . . . nor presented by manuals/policy" upon his arrival at MDC. (Id.)

On August 2, 2011, the plaintiff filed an Amended Complaint against the City of New York, DOC, and two MDC correctional officers in their official capacity: Captain Sumpter and Correction Officer Anderson. (Docket # 9.) The Amended Complaint contains causes of action under section 1983 for "poor prison conditions" and under the Due Process Clause for being "deliberately indifferent to this plaintiff's needs." (Am. Compl. at 3–A.)[1] The plaintiff alleges that as a result of his accident, he sustained injuries to his lower back, right thigh, right foot, and "stool," causing him "continuing pain" as well as "emotional distress, mental anguish, [and] pain & suffering." (Id. at 3, 5.) In an Order dated August 15, 2011, the Court dismissed the Amended Complaint as to DOC, Captain Sumpter, and Correction Officer Anderson. (Docket # 12.) The City of New York, the last remaining defendant, now moves to dismiss under Rule 12(b)(6).

---

[1] The Court construes the claims by the plaintiff, then a pretrial detainee, as a Fourteenth Amendment Due Process claim for which a remedy is sought under section 1983.

DISCUSSION

I.         Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'Labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 555).

In considering a Rule 12(b)(6) motion to dismiss, all non-conclusory factual allegations are accepted as true, see id. at 1949–50, and all reasonable inferences are drawn in favor of the plaintiff. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). However, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim. Id. at 1950. On a motion to dismiss, the Court considers only the facts stated in the complaint, exhibits or documents incorporated by reference, matters of which judicial notice may be taken, and documents upon which the complaint heavily relies. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Lastly, a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotations omitted). The plaintiff's pleadings are thus given a liberal and generous construction and are read "to raise the strongest arguments that they

suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However,

dismissal of a pro se complaint is "appropriate where 'it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'"  Rodriguez

v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45–46

(1957)).  A pro se complaint must still "'state a claim to relief that is plausible on its face.'"

Mancuso v. Hynes, 379 Fed. Appx. 60, 61 (2d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949)

(non-precedential).

II.          The Plaintiff's Amended Complaint Is Dismissed

          The defendant moves to dismiss the Amended Complaint on four grounds,

contending that the plaintiff: (1) made false statements on his application to proceed in forma

pauperis ("IFP"); (2) failed to exhaust his administrative remedies prior to filing this lawsuit; (3)

does not state a cognizable section 1983 claim; and (4) does not plausibly allege municipal

liability on the part of the defendant.  (See Def.'s Mem. L.)  In his opposition to the defendant's

motion, the plaintiff responds only to the first ground and does not address the other three

grounds.  (Docket # 24, 26.)  As discussed below, the Court declines to dismiss the Amended

Complaint because of misstatements in the plaintiff's IFP application, but concludes that

dismissal is warranted for non-exhaustion of administrative remedies, failure to state a claim

under section 1983, and failure to allege municipal liability by the City of New York.

          a.          Application to Proceed In Forma Pauperis

          A prisoner may apply to the Court for authorization to commence an action

without prepayment of filing fees upon a showing that he or she is unable to pay the fees.  28

U.S.C. § 1915(a)(2).  If IFP status is granted, the prisoner will pay the fees gradually from his or

her prison trust account.  Id. § 1915(b); see Cuoco v. U.S. Bureau of Prisons, 328 F. Supp. 2d

463, 467 (S.D.N.Y. 2004).  To obtain IFP status, the prisoner must submit an affidavit that

includes a statement of all assets the prisoner possesses.  28 U.S.C. § 1915(a)(2).  The prisoner

must also submit a certified copy of his or her trust fund account summary (or institutional

equivalent) for the six months preceding filing of the complaint from each prison where the

prisoner is or was confined.  Id.  If at any time the Court determines that, in an application for

IFP status, the prisoner's "allegation of poverty is untrue," the court "shall dismiss the case."  Id.

§ 1915(e)(2)(A).

   A misrepresentation by a plaintiff as to his or her financial assets is not

necessarily fatal to the plaintiff's claim.  Vann v. Horn, 2011 WL 3501880, at *1 (S.D.N.Y. Aug.

9, 2011).  The "purpose of section 1915(d) is not to punish litigants whose affidavits contain

insignificant discrepancies, but to weed out the litigants who falsely understate their net worth"

to obtain IFP status.  Matthews v. Gaither, 902 F.2d 877, 881 (11th Cir. 1990).  However,

dismissal is appropriate where a plaintiff "misrepresents [his or] her financial arrangements in

bad faith to obtain IFP status."  Cuoco, 328 F. Supp. 2d at 468.  Bad faith includes "conceal[ing]

a source of income in order to gain access to a court without prepayment of fees."  See id.  A

plaintiff's familiarity with the IFP system may be considered in determining whether the plaintiff

has acted in bad faith.  Compare id. at 466, 469 (finding that plaintiff who obtained IFP status in

fifteen previous civil suits acted in bad faith in concealing income), with Morales v. E.I. Du Pont

De Nemours & Co., 2004 WL 2106590, at *2 (W.D.N.Y. Sept. 21, 2004) (finding that plaintiff

who was not familiar with the IFP system did not misrepresent income in bad faith).

   In this case, the plaintiff submitted an IFP application dated January 18, 2011 in

which he stated that he had not received any money from any source within the past twelve

months.  (Request to Proceed *In Forma Pauperis*, attached at Decl. of Jeffrey Dantowitz in Supp.

of Def's. Mot. to Dismiss ("Dantowitz Decl.") Ex. A ¶ 3.)  The plaintiff also answered "no" in response to a question asking whether he had "any money, including any money in a checking or savings account."  (Id. ¶ 4.)  Under the penalty of perjury, the plaintiff signed the IFP application, which also stated: "I understand that the Court shall dismiss this case if I give a false answer to any questions in the declaration."  (Id.)  However, the plaintiff's prison account statement indicates that he received deposits totaling more than $1,000 during the twelve months prior to submitting his IFP application, including several deposits in amounts greater than $100. (Inmate's Transaction List: Martin, Derek, attached at Dantowitz Decl. Ex. B.)  The defendant moves to dismiss the Amended Complaint on the basis of these undisclosed funds.

  The Court declines to dismiss the Amended Complaint on the basis of the plaintiff's IFP application.  The Court cannot conclude that the plaintiff "deliberately concealed" his finances so as to "convey the impression that [he] could not pay the filing fee."  Cuoco, 328 F. Supp. 2d at 467.  First, although the plaintiff admits that he failed to disclose funds that were deposited in his account, he claims that he requested IFP status believing that had he "had no money to pay" the required filing fee.  (Pl.'s Aff. in Supp. of Mot. at 3.)  As the present action represents the plaintiff's first civil suit, the Court credits his lack of prior experience in litigation or with the IFP system.  Cf. Vann, 2011 WL 3501880, at *4 (dismissing pro se complaint under section 1915(e)(2)(A) where prisoner had filed "numerous" federal and state court actions).

  Second, the defendant does not contend that the plaintiff would not have been eligible to proceed IFP even had the funds been disclosed.  See, e.g., Chandra v. Beth Israel Med. Ctr., 2010 WL 5600373, at *8 (S.D.N.Y. Dec. 2, 2010) ("Here, [the plaintiff] improperly failed to answer the question about his past receipt of money—but it is not clear that he was IFP-eligible even with the inclusion of this money.").  The plaintiff also contends that his inmate

transaction list contains "many errors" regarding deposits he never received and charges he never incurred.  (Pl.'s Aff. in Supp. of Mot. at 3–6.)  Lastly, DOC records attached to his opposition indicate that the plaintiff has since been assessed the full filing fee.  (Id. Ex. A.)  Under these circumstances, the Court cannot conclude that the plaintiff's "allegation of poverty" in his IFP application was "untrue" so as to warrant dismissal.  28 U.S.C. § 1915(e)(2)(A); see, e.g., Vann, 2011 WL 3501880, at *4 (dismissing complaint where plaintiff "falsely and materially misstated his assets on his IFP application and did so in bad faith").  As such, the motion to dismiss on this ground is denied.

        b.    <u>Exhaustion of Available Administrative Remedies</u>

        The plaintiff's Amended Complaint is set forth on the complaint form for section 1983 cases utilized by the Pro Se Office in this District.  The form recites the exhaustion of administrative remedies requirement under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e <u>et seq.</u>  The PLRA requires that a prisoner exhaust all available administrative remedies before bringing an action regarding his confinement, providing: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA "*requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."  <u>Neal v. Goord</u>, 267 F.3d 166, 122 (2d Cir. 2001) (internal quotations and citation omitted) (emphasis in original).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

An inmate's "failure to exhaust is an affirmative defense under the PLRA" such that he is "not required to specially plead or demonstrate exhaustion in [his] complaint[]." Jones v. Bock, 549 U.S. 199, 216 (2007).  However, if non-exhaustion "is apparent from the face" of the pleading, a Rule 12(b)(6) motion is "the proper vehicle" to raise it as an affirmative defense. McCoy v. Goord, 255 F. Supp. 2d 233, 249, 251 (S.D.N.Y. 2003) (Chin, J.) (holding that if non-exhaustion "is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted").  In assessing the affirmative defense of non-exhaustion, the Second Circuit employs a three-part inquiry.  See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  A court must (1) determine whether administrative remedies were in fact "available" to the prisoner; (2) consider whether the defendant has forfeited the affirmative defense of non-exhaustion or is estopped from raising it; and (3) determine whether "special circumstances" justify the prisoner's failure to comply with administrative procedural requirements.  Id.  "Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal" in assessing availability.  Mojias v. Johnson, 351 F.3d 606, 609–10 (2d Cir. 2003).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009) (quoting Jones, 549 U.S. at 218).  Here, the plaintiff was a pretrial detainee at MDC.  He was thus required to comply with DOC's multistep Inmate Grievance Resolution Program ("IGRP") prior to filing this action. The procedures underlying the IGRP have been described in numerous judicial opinions and are publicly available on DOC's website.[2]  Under the IGRP, an inmate must: (1) file a complaint

---

[2] DOC's website contains a link to its directives concerning the IGRP.  See City of New York Dep't of Corr., Directives, http:// www.nyc.gov/html/doc/html/directives/dept_directives.shtml.  Like other courts in this Circuit, the Court takes judicial notice of the procedures associated with the IGRP.  See, e.g., Mamon v. N.Y. City Dep't of

with the Inmate Grievance Resolution Committee ("IGRC") for informal resolution; (2) if an informal resolution is not reached within five days, request a formal hearing before the IGRC; (3) appeal any adverse decision by the IGRC to the Commanding Officer; (4) appeal any adverse decision by the Commanding Officer to the Central Office Review Committee ("CORC"); and (5) appeal any adverse decision by the CORC to the New York City Board of Correction ("BOC").  See Mamon, 2012 WL 260287, at *3; see, e.g., Reuben v. N.Y. City Dep't of Corr., 2011 WL 5022928, at *2 (S.D.N.Y. Oct. 18, 2011); Chisholm v. N.Y. City Dep't of Corr., 2009 WL 2033085, at *1 (S.D.N.Y. July 13, 2009).

Exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly."  Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).  To be "[p]roper," exhaustion must comply with all of the agency's "deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90–91. "Complaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement."  Williams v. Dep't of Corr., 2011 WL 3962596, at *2 (S.D.N.Y. Sept. 7, 2011) (internal quotations omitted).  "A prisoner's remedies are not deemed exhausted until he proceeds through all five levels of the [IGRP]."  Williams, 2005 WL 2862007, at *10 (internal quotations omitted).

Accepting the plaintiff's non-conclusory allegations as true and drawing all reasonable inferences in his favor, the Court concludes the plaintiff did not exhaust his administrative remedies.  The form complaint used by the plaintiff asks: "Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arise?"  In response, the plaintiff answered: "No."  (Am. Compl. at 4.)  The plaintiff then stated he did not

_____

Corr., 2012 WL 260287, at *3 n.4 (S.D.N.Y. Jan. 27, 2012); Swanston v. Dep't of Corr., 2011 WL 5105489 (S.D.N.Y. Oct. 27, 2011); Williams, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005).

file a grievance "about the events described in []his complaint at any other jail, prison, or other correctional facility." (Id.) By admitting that he never filed a written grievance at MDC or any other DOC facility, the plaintiff's Amended Complaint makes clear that he did not strictly comply with DOC's IGRP procedures so as to exhaust his claims under the PLRA.

 The Amended Complaint also alleges no facts showing that he requested a formal hearing or appealed an adverse grievance decision to the Commanding Officer, CORC, or the BOC. Instead, the plaintiff made a series of oral complaints to MDC officials. For example, in response to the question: "If you did file a grievance, about the events described in this complaint, where did you file the grievance?" the plaintiff wrote that he "had an investigation take place, injury report and made numerous complaints to the c/o about need for shoes etc." (Id.) And in response to the question: "What steps, if any, did you take to appeal that decision?" the plaintiff wrote: "All oral appeals only." (Id.) "[O]ral statements to various officials" do not satisfy the PLRA's exhaustion requirement. Simon v. Campos, 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010); see, e.g., Magassouba v. Cross, 2010 WL 1047662, at *8 (S.D.N.Y. Mar. 1, 2010) (collecting cases); Harrison v. Goord, 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (holding that oral complaints "just don't cut the mustard" in establishing exhaustion).

 Nor may the plaintiff's failure to exhaust be excused under Hemphill's three-part inquiry. Looking to "the applicable set of grievance procedures" documented in "a legally sufficient source," the Court first concludes that administrative remedies were available to the plaintiff. Mojias, 351 F.3d at 609–10. As a detainee at MDC, the plaintiff was subject to DOC's IGRP. In his Amended Complaint, the plaintiff asserts: "The grievance procedures and operations were never active in this facility, nor presented by manuals/policy/etc. to plaintiff upon arrival." (Am. Compl. at 4). In raising the defense of non-exhaustion, however, the

defendant has cited to DOC's multi-step IGRP procedures, which are publicly available and of which the Court takes judicial notice.  See, e.g., Swanston, 2011 WL 5105489, at *2 (taking notice of IGRP framework because procedures have been made "publicly available" online, in defendant's motion papers, and in prior judicial authority); Mamon, 2012 WL 260287, at *3 (same).  The plaintiff has not responded to or in any way addressed his failure to file a grievance in his opposition to this motion.  Moreover, neither his opposition nor the Amended Complaint alleges that the plaintiff inquired as to how to access the IGRP procedures or whether such procedures existed, sought to file a grievance, or requested that a grievance or other complaint be filed on his behalf.[3]  The Court therefore concludes that administrative remedies were available to the plaintiff.

        Second, the plaintiff does not allege that the defendant took affirmative action to prevent him from accessing the IGRP.  A defendant may be estopped from asserting non-exhaustion where he takes some action to inhibit an inmate from accessing available administrative remedies.  Hemphill, 380 F.3d at 686.  "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action."  Amador, 655 F.3d at 103 (citing Hemphill, 380 F.3d at 688, and Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)).  Here, the plaintiff "does not allege, and has offered no evidence tending to suggest, that he was in any way prevented or impeded from exhausting his administrative remedies, or misled into thinking he did not need to do so."  Swanston, 2011 WL 5105489, at *2; see also Williams, 2011 WL 3962596, at *5 (dismissing section 1983 claim where there was no "allegation that defendant took any action to inhibit plaintiff from participating in [the IGRP] procedure" at City-run DOC facility).  Indeed, the

---

[3] As noted, the plaintiff's opposition to this motion does not even address the defendant's affirmative defense of non-exhaustion.  (Docket # 24, 26.)

plaintiff admits that he "d[id] not know" whether the MDC had a grievance procedure at all. (Am. Compl. at 4.)  The defendant is thus not estopped from asserting non-exhaustion as an affirmative defense.

Lastly, the plaintiff alleges no "special circumstances" that justify his "failure to comply" with the IGRP.  Hemphill, 380 F.3d at 686; see, e.g., Dargan v. Heath, 2011 WL 1795814, at *6 (S.D.N.Y. May 4, 2011) (dismissing section 1983 claim for non-exhaustion where prisoner stated on pro se form complaint that he did not file a grievance and alleged no facts "plausibly suggesting that his failure to exhaust [wa]s excusable").

"The Second Circuit has made clear that even if prison officials have notice of a prisoner's claims as a result of such informal communications, the purposes of the PLRA's exhaustion requirement can only be realized through strict compliance with the applicable administrative procedures."  Mamon, 2012 WL260287, at *4 (citing Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007)).  Here, the plaintiff admitted to not filing a grievance, and has not responded to the defendant's non-exhaustion defense or its citation to DOC's publicly available grievance procedures.  Failing to plausibly allege facts showing exhaustion or that this failure to exhaust should be excused, the Amended Complaint must be dismissed.

c.    The Amended Complaint Fails to State a Claim Under Section 1983

Even if the plaintiff had exhausted his administrative remedies, the Amended Complaint would not otherwise state a claim under section 1983.  To prevail, the plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

Generously construing his allegations, the plaintiff raises a deliberate indifference claim challenging the conditions of his confinement at MDC.  The Amended Complaint alleges that by issuing inadequate footwear and allowing excess water on the floor, the defendant violated the plaintiff's right to Due Process and to be free from cruel and unusual punishment. (Am. Compl. at 3–A.)  Although the Eighth Amendment does not technically apply to a pretrial detainee such as the plaintiff, the standard of review for a Fourteenth Amendment Due Process claim by a pretrial detainee is identical to an Eighth Amendment claim by a convicted prisoner. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).  Accordingly, the Court analyzes the plaintiff's allegations under the Eighth Amendment's deliberate indifference standard.  See id. ("Claims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

The Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (internal citations omitted).  "The conditions of a prisoner's confinement can give rise to an Eight Amendment violation."  Phelps v. Kapnolas, 308 F.3d 108, 185 (2d Cir. 2002).  Deliberate indifference to an inmate's conditions of confinement falls under the prohibition of cruel and unusual punishment and is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotations omitted).  "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle."  Wilson v. Seiter, 501 U.S. 294, 303 (1991) (alterations in original) (internal quotations omitted).

A section 1983 claim for deliberate indifference contains both objective and subjective prongs.  See Wilson, 501 U.S. at 298–99.  Under the objective prong, the deprivation must be sufficiently serious.  Prison officials may not expose inmates to conditions that "pose an unreasonable risk of serious damage to [their] health."  Helling v. McKinney, 509 U.S. 25, 35 (1993).  Nor may States deprive inmates of their "basic human needs," such as "food, clothing, shelter, medical care, and reasonable safety."  Id. at 32.  However, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson, 501 U.S. at 298 (internal citations and quotations omitted).  The Constitution "does not mandate comfortable prisons."  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  To satisfy the objective prong, a plaintiff "must prove that the conditions of his confinement violate contemporary standards of decency."  Phelps, 308 F.3d at 185.  "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."  Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Under the subjective prong, the prison officials who caused the deprivation must have acted with a sufficiently culpable state of mind, meaning a "deliberate indifference to prisoners' health or safety."  Blyden, 186 F.3d at 262.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Indeed, the Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Farmer, 511 U.S. at 837.  The deliberate indifference standard is equivalent to that of

recklessness as used in criminal law.  Id. at 839–40.  As such, "an ordinary lack of due care for

prisoner interests or safety" is insufficient to establish liability.  Blyden, 186 F.3d at 262.

i.      The Plaintiff Has Not Alleged a Sufficiently Serious Deprivation of His
Constitutional Rights

Here, the plaintiff fails to allege a sufficiently serious deprivation under the

objective prong.  The plaintiff alleges that he slipped and fell on a wet floor while wearing ill-

fitting shoes with inadequate soles.  (Am. Compl. at 3.)  These allegations do not constitute a

violation of "contemporary standards of decency," Phelps, 308 F.3d at 185, or a denial of "the

minimal civilized measure of life's necessities."  Wilson, 501 U.S. at 298.  DOC's issuance of

shoes two sizes too big with inadequate "bottoms/soles to prevent slip and falls" does not does

not constitute the "extreme deprivation" necessary to state a cognizable "conditions-of-

confinement" claim.  Blyden, 186 F.3d at 263; see, e.g., Williams, 2011 WL 3962596, at *4

(dismissing section 1983 claim that prisoner's DOC-issued shoes were "poorly constructed with

no support for the foot"); Hallett v. City of New York, 2010 WL 1379733, at *6 (S.D.N.Y. Mar.

26, 2010) (dismissing section 1983 claim where prisoner was "issued [] shoes that were too

small" for his feet); Edwards v. Quinones, 2010 WL 4669110, at *3 (S.D.N.Y. Nov. 17, 2010)

(dismissing prisoner's section 1983 claim based on "dissatisfaction with his sneakers").[4]  The

Constitution "does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.

Nor do the injuries sustained by the plaintiff while wearing his DOC-issued shoes

offend contemporary standards of decency.  The plaintiff alleges that he slipped and fell on a wet

floor because of his DOC-issued footwear and the "poor design" of the shower area, causing him

---

[4] The Court notes that the plaintiff's allegations of inadequate footwear stand in contrast to those of inmates who
have alleged a deprivation of their constitutional right to clothing.  See, e.g., Wheat v. N.Y. City Dep't of Corr.,
2010 WL 5129065, at *4 (S.D.N.Y. Dec. 15, 2010) ("Here, the requisite harm is incurred when [the plaintiff] was
*deprived of* shoes, not after he sustained injuries relating to *uncomfortable* shoes." (emphasis added)).

pain in his lower back, right side, right foot, and big toe.  (Am. Compl. at 3.)  The plaintiff

visited the MDC medical clinic after his fall, with the medical report from his visit stating that he

complained of pain in his elbow, lower back, and the back of his neck.  (Id. Ex. A.)  The

Amended Complaint does not allege that the plaintiff was prescribed medication or sought

further treatment.  Courts in this Circuit agree that bodily injuries sustained from a slip-and-fall

on a wet floor simply do not rise to the level of a constitutional violation.  Accord Hawkins v.

Nassau Cnty. Corr. Facility, 781 F. Supp. 2d 107, 113 (E.D.N.Y. 2011) ("[T]he alleged water in

the shower area does not deprive plaintiff of a basic human need and, thus, cannot as a matter of

law give rise to a constitutional violation" under section 1983); see, e.g., Flowers v. City of New

York, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) ("Any claim against the City for the slip and

fall that resulted in plaintiff's ankle injury—a garden variety tort—is not cognizable under

Section 1983 . . . ."); Edwards v. City of New York, 2009 WL 2596595, at *3 (S.D.N.Y. Aug.

24, 2009) ("[C]ourts have held that allegations of wet conditions leading to a slip-and-fall will

not support a Section 1983 claim even where, as here, the plaintiff also alleges that the individual

defendants had notice of the wet condition but failed to address it." (collecting cases)).[5]

       "Only deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation."  Salahuddin v. Goord,

467 F.3d 263, 279 (2d Cir. 2006) (internal quotations omitted).  Assorted pain in his back, thigh,

calf, foot, and stool following his slip-and-fall on a wet floor did not deprive the plaintiff of his

"basic human needs" or pose "an unreasonable risk of serious damage" to his future health.

---

[5] Courts in other federal circuits have reached the same conclusion.  See, e.g., Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004) (holding that prison's "standing-water problem" was not a sufficiently serious condition); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) ("Even if the floors of the shower are slippery . . ., slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment." (internal quotations omitted)).

Phelps, 308 F.3d at 185 (quoting Helling, 509 U.S. at 32–35). The Amended Complaint thus fails to allege a sufficiently serious deprivation under the objective prong.

ii.   The Plaintiff Has Not Alleged that the Defendant Was Deliberately Indifferent to a Substantial Risk of Serious Harm

Even if the plaintiff had alleged a sufficiently serious deprivation, he fails to satisfy the subjective prong of the deliberate indifference standard. See Wilson, 501 U.S. at 298–99. To state an Eighth Amendment claim, a plaintiff must allege that prison officials both knew of and disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 825. Deliberate indifference exists only "when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (quoting Farmer, 511 U.S. 825, 847 (1994)). Mere negligence or "an ordinary lack of care" is insufficient. Blyden, 186 F.3d at 262.

The plaintiff does not identify any MDC official as acting with deliberate indifference to the plaintiff's conditions of confinement. The plaintiff alleges:

> [T]he City could not keep up with supply and demand upon the need of these shoes, nor were they of a quality that would last over 15 days upon everyday use/nor did that have adequate bottoms/soles to prevent slip and falls, leaves the city negligent, and acting with deliberate indifference to the needs of detainees.

(Am. Compl. at 3.) The plaintiff does not name or identify any MDC official who knew of and disregarded the risk that the plaintiff's shoes would cause him to slip and fall on a wet floor. Nor does he allege that any official was aware of the "poor design" and lack of a "wet floor sign" near the shower area prior to his accident. (Id.) The only individual named in the complaint is Correction Officer Anderson, however the entirety of the plaintiff's allegations as to Anderson is that she "was in plain view to see" the accident. (Id.) The plaintiff has not alleged she was

- 17 -

consciously aware of and disregarded the risk that the plaintiff's ill-footing footwear coupled

with a wet floor near the shower area would cause him to slip and fall.[6]

   At most, the plaintiff alleges negligence on the part of DOC in issuing him ill-

fitting shoes and failing to post "wet floor" signs near MDC's "poor[ly] design[ed]" shower area.

(Id.)  However, it is well settled that "negligence is insufficient to support an Eighth Amendment

claim" under the deliberate indifference standard.  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir.

2010).  The deliberate indifference standard "requires that only the deliberate infliction of

punishment, and not an ordinary lack of due care for prisoner interests or safety, leads to

liability."  Blyden, 186 F.3d at 262.  Accordingly, the plaintiff has failed to allege that any

individual acting under color of state law acted with a sufficiently culpable state of mind.

   d.  The Plaintiff Fails to State a Claim for Municipal Liability

   Even had the plaintiff met his burden under the deliberate indifference standard,

the Amended Complaint fails to adequately allege municipal liability on the part of the City of

New York.  The City may only be found liable under section 1983 when the alleged unlawful

action was implemented or executed pursuant to a governmental policy or custom.  See Monell

v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978); accord Reynolds v. Giuliani, 506 F.3d

183, 190 (2d Cir. 2007).  The City may not be held liable under section 1983 on a theory of

vicarious liability.  Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely*

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under §

1983 on a *respondeat superior* theory." (emphasis in original)).  Moreover, "a direct casual link

between a municipal policy or custom and the alleged constitutional deprivation" must be

established.  City of Canton v. Harris, 489 U.S. 378, 385 (1989).

---

[6] The Court previously dismissed the Amended Complaint as to Anderson for failing to allege her personal
involvement in the plaintiff's alleged deprivations.  (Docket # 12.)

Construed in its most favorable light and drawing all reasonable inferences in the plaintiff's favor, the Amended Complaint fails to adequately allege municipal liability by the defendant. The plaintiff states only that "prison policy and procedures were deliberately indifferent to this plaintiff's needs, which was the proximate cause of this plaintiff's injuries." (Am. Compl. at 3–A.) Nowhere does the plaintiff identify any alleged policy, custom, or practice of the City that caused his injuries. Bald labels and conclusions or a "formulaic recitation of the elements" will not suffice to state claim under Rule 8. Iqbal, 129 S. Ct. at 1949–50. Failing to identify a specific policy or to allege facts plausibly suggesting that enforcement of such a policy caused his injuries, the Amended Complaint does not contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The Amended Complaint must therefore be dismissed.

CONCLUSION

For the reasons stated above, the defendant's motion to dismiss (Docket # 17) is GRANTED. The defendant shall provide to the plaintiff copies of all unreported cases cited herein. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is directed to enter judgment in favor of the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 19, 2012

- 19 -